UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| JOHN K. FORT, Chapter 7 Trustee for International Payment Group, Inc., | ) ) ) | Case No.: 7:13-CV-1883-BHH |
| Plaintiff, | ) ) | |
| vs. | ) ) | **Opinion and Order** |
| SUNTRUST BANK, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

This matter is before the Court on Defendant SunTrust Bank's ("SunTrust" or "Defendant") Motion for Summary Judgment (ECF No. 31-7). For the reasons set forth in this Order, Defendant's Motion is granted in full.

## INTRODUCTION

The U.S. Bankruptcy Court for the District of South Carolina, Judge Helen E. Burris presiding, submitted to this Court its Proposed Findings of Fact and Conclusions of Law ("Proposed Order") (ECF No. 67-2) with respect to Defendant's Motion for Summary Judgment in Adversary Proceeding 10-80049-hb. The Bankruptcy Court recommends that this Court grant Defendant's Motion in part and deny it in part. The Proposed Order sets forth the relevant facts and standards of law on this matter, and the Court incorporates them herein without recitation, to the degree not inconsistent.[1]

---

[1] By way of correction, the Court notes two minor typographical errors in the proposed findings of fact. Specifically, finding 55 states: "The OFX is an online platform for use by SunTrust clients to request purchases, sales, or other transfers of foreign currency, including requests that settle to or from multicurrency accounts (2148 type accounts) at SunTrust." (ECF No. 67-2 at 12.) This statement should read: ". . . (**1248** type accounts) . . . ." Finding 103 states: "IPG acted without prior written notice to IPG, but Collins phoned Burgess to advise him of the decision." (*Id.* at 20.) This statement should read: "**SunTrust** acted without prior written notice to IPG . . . ."

## RELEVANT PROCEDURAL BACKGROUND

The underlying Adversary Proceeding was initiated on April 9, 2010 in the Bankruptcy Court pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local Civil Rule 83.IX.01, D.S.C. Plaintiff John K. Fort ("Plaintiff" or "Trustee"), Chapter 7 Trustee for debtor International Payment Group, Inc. ("IPG"), filed a Complaint alleging causes of action for: (1) breach of contract accompanied by a fraudulent act, (2) aiding and abetting breach of fiduciary duty, (3) negligence and gross negligence, (4) breach of fiduciary duty, (5) tortious interference with contractual relations, (6) violation of the South Carolina Unfair and Deceptive Trade Practices Act, (7) violation of S.C. Code Ann. §§ 36-4A-102, *et seq.*, and (8) conversion. (ECF No. 5-1.)

IPG was a money service business licensed by the United States Treasury Department. IPG conducted various payment transactions on behalf of its customers, including foreign currency transactions that involved the purchase and sale of major currencies, wire transfers, drafts, and spot and forward contracts. In general, IPG's customer paid IPG for foreign currency and IPG, in turn, became obligated to pay the customer's beneficiary in that foreign currency. In order to facilitate these payment transactions, IPG needed to partner with a bank that could execute the transactions through its electronic banking systems, which need gave rise to the relationship between IPG and SunTrust. In this mutually beneficial relationship, SunTrust gave IPG access to its on-line foreign exchange ("OFX") and online treasury management ("OTM") systems to make the necessary trades and conveyances, and received a portion of the proceeds as a result. In January 2008, IPG discovered various defalcations by its CFO and reported the same to SunTrust. The gravamen of Trustee's claims in the Adversary Proceeding boil down to four core allegations: (1) SunTrust

failed to properly account for funds deposited to and withdrawn from IPG's SunTrust accounts, resulting in "missing" IPG funds as evidenced by creditor claims in the bankruptcy, (2) unauthorized debits were made from IPG's SunTrust accounts, (3) SunTrust failed to properly execute payment orders issued by IPG and either kept the related funds or allowed them to be improperly disbursed, and (4) SunTrust caused IPG to fail by immediately and unnecessarily denying IPG access to the OFX and OTM systems, leading to IPG's filing for bankruptcy relief. Trustee is seeking damages from SunTrust for losses he contends were incurred by IPG as a result of SunTrust's alleged improper handling of account funds and alleged inappropriate reaction to the report of defalcations. SunTrust denies all wrongdoing and/or liability. Additionally, SunTrust contends that IPG's demise was the result of its own mismanagement and lack of internal controls.

After a Motion to Withdraw Reference and return of the lawsuit to the Bankruptcy Court for pretrial matters, discovery was completed and the Bankruptcy Court considered the parties' pre-trial motions (including Trustee's Motion for Partial Summary Judgment, ECF Nos. 13-1, 15-1). Defendant moved, pursuant to Federal Rule of Civil Procedure 56, made applicable to the Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7056, for entry of an Order granting summary judgment in its favor as to all causes of action asserted by Trustee. (ECF No. 31-7.) Trustee responded (ECF No. 61-1), and Defendant replied (ECF No. 64-1) in turn. After consideration of the extensive briefing, the arguments of counsel, and the voluminous factual record developed during discovery, the Bankruptcy Court recommended that Defendant's motion be granted in part and denied in part, submitting its Proposed Order to this Court

accordingly. (ECF No. 67-2.)

Subsequent to the Bankruptcy Court's issuance of its Proposed Order, both Defendant and Plaintiff filed timely objections. (ECF Nos. 67-5, 67-6.) The parties also responded to one another's objections. (ECF Nos. 68-1, 69-1.) The Court has thoroughly reviewed the record, the briefing, the Proposed Order, and the objections, and now issues the following ruling.

## LEGAL FRAMEWORK

U.S. District Courts have original jurisdiction over all bankruptcy matters and related proceedings. 28 U.S.C. §§ 1334(a), (b). Title 28, section 157 allows district courts to refer bankruptcy cases to the bankruptcy court. 28 U.S.C. § 157(a). The District of South Carolina has referred all bankruptcy cases to its bankruptcy court. Bankruptcy courts may decide "core" proceedings under title 11, which include "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C); *Moses v. CashCall, Inc.*, 781 F.3d 63, 70 (4th Cir. 2015).[2] A bankruptcy court may also hear "non-core" claims, but, absent consent, it cannot finally resolve them and must instead submit proposed findings of fact and conclusions of law to its respective district court. 28 U.S.C. § 157(c)(1); *Moses*, 781 F.3d at 70.

In *Stern v. Marshall*, 564 U.S. 462 (2011), the U.S. Supreme Court held that bankruptcy courts do not have constitutional authority to enter final judgments in certain core proceedings, despite their statutory authority to adjudicate those matters under § 157(b). *Stern*, 564 U.S. at 484. This is the case when the suit is "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is

---

[2] At a hearing on this matter, the parties agreed that the only category of core proceedings that apply to the instant facts is § 157(b)(2)(C). (ECF No. 12-2 at 4.) The Bankruptcy Court found that this lawsuit is a core proceeding as defined in § 157(b)(2). (ECF No. 67-2 at 22.)

brought within the bounds of federal jurisdiction," because "the responsibility for deciding that [type of] suit rests with Article III judges in Article III courts." *Id.* (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)) (internal quotation and citation omitted). "[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499. The Adversary Proceeding here involves so-called "*Stern* claims" because the various causes of action neither stem from the bankruptcy itself, nor would they be resolved in the claims allowance process. Neither party disputes this categorization.

While *Stern* made clear that some claims labeled by Congress as "core" may not be adjudicated by a bankruptcy court in the manner contemplated by § 157(b), it did not address how the bankruptcy court should proceed under those circumstances. The U.S. Supreme Court answered this question in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). There the Supreme Court held that "[w]hen a court identifies a claim as a *Stern* claim, it has necessarily 'held invalid' the 'application' of § 157(b)—*i.e.*, the 'core' label and its attendant procedures—to the litigant's claim." *Id.* at 2173. However, "If the claim satisfies the criteria of § 157(c)(1), the bankruptcy court simply treats the claims as non-core: The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." *Id.* The claims in the instant case satisfy the criteria of § 157(c)(1), as they are "otherwise related to a case under title 11;" thus, the instructions provided in *Executive Benefits* apply here. Those instructions comport with how this case was actually handled pursuant to Judge Timothy M. Cain's Order of April

2, 2012. (ECF No. 2-2 at 4-7.) Moreover, that handling is in accordance with the *Standing Order Concerning Title 11 Proceedings Referred Under Local Civil Rule 83.IX.01, Referral to Bankruptcy Judges*, Misc. No. 3:13–mc–00471–TLW (D.S.C. Dec. 5, 2013). Accordingly, Judge Burris' Proposed Order on Defendant's Motion for Summary Judgment is before this Court for *de novo* review.

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. "Genuineness" of the disputed issue(s) "means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

As would be true for a matter referred to a U.S. Magistrate Judge, the Bankruptcy Court, through its Proposed Order, has made only a recommendation to this Court. The responsibility to make a final determination remains with the district court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). As such, the standard of review for objections to the Proposed Order is *de novo*, and the Court may accept, reject, or modify the Proposed Order, in whole or in part, or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1)(C).

## **DISCUSSION**

In the Proposed Order, the Bankruptcy Court recommends that Defendant's Motion for Summary Judgment be granted to dispose of Trustee's causes of action for (1) breach of contract accompanied by a fraudulent act, (2) aiding and abetting breach

of fiduciary duty, (3) tortious interference with contractual relations, (4) violation of the South Carolina Unfair and Deceptive Trade Practices Act, (5) violation of S.C. Code Ann. §§ 36-4A-102, *et seq.*, and (6) conversion. (ECF No. 67-2 at 37.) Correspondingly, the Bankruptcy Court recommends that Defendant's motion be denied and that trial proceed on Trustee's causes of action for (1) negligence and gross negligence, and (2) breach of fiduciary duty. (*Id.*) Both Defendant and Trustee assert various objections to the Bankruptcy Court's Proposed Order, which the Court will now address.[3]

### A. Negligence and Gross Negligence

Defendant first objects to the Bankruptcy Court's conclusions regarding the negligence and gross negligence cause of action,[4] specifically the following language from the Proposed Order:

> There is some evidence of a lack of internal controls over the foreign exchange department at SunTrust, although the relationship of that evidence to the demise of IPG is unclear on this record. There is a dispute regarding the appropriateness of SunTrust's actions in response to the report of Pfaff's theft and if SunTrust acted inappropriately, there is evidence to support damage incurred as a result. For this reason, summary judgment should be denied for this cause of action.

(ECF No. 67-2 at 33.) Defendant asserts that the Bankruptcy Court: (a) overlooked contractual provisions governing the relationship between the parties, the effect of which preclude Trustee's negligence claims; (b) failed to conclude that the Trustee's claim for gross negligence was barred, even though there is no evidence, and it did not make a finding, that SunTrust engaged in wanton or intentional misconduct toward IPG,

---

[3] In this Order, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Proposed Order by the Bankruptcy Judge, incorporated by specific reference, herein, to the degree not inconsistent. Comprehensive recitation of law and fact exists there. To the degree the Proposed Order is inconsistent with the ruling issued herein, it is hereby modified accordingly.

[4] Although Trustee has plead his negligence and gross negligence theories in one cause of action (ECF No. 5-1 at 9), these theories are, in truth, distinct causes of action. Nevertheless, the Court will discuss them together, as they are obviously related.

as required in order for this claim to withstand summary judgment; (c) failed to conclude that the Trustee's claims for negligence were barred as a matter of law, even though it made no finding that SunTrust owed a duty sounding in negligence to IPG; and (d) overlooked the legal significance of its finding that IPG was not, in fact, damaged by SunTrust's breach of any such alleged duty. (ECF No. 67-5 at 3-4.)

"Negligence is the breach of a duty of care owed to the plaintiff by the defendant." *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163 (S.C. 2012). In order to succeed on his negligence claim, Trustee must plead and prove that (1) SunTrust owed a duty of care to IPG, (2) SunTrust breached that duty by a negligent act or omission, (3) SunTrust's negligent act or omission resulted in damage to IPG, and (4) IPG's damages proximately resulted from SunTrust's breach of duty. *Id.* at 163-64. Failure to establish any of these elements results in failure of the claim. *Richardson's Restaurants, Inc. v. Nat'l Bank of S.C.*, 403 S.E.2d 669, 672 (S.C. Ct. App. 1991).

"Gross negligence is 'the intentional, conscious failure to do a thing that is [i]ncumbent upon one to do, or the doing of a thing intentionally that one ought not to do.'" *Pilot Indus. v. S. Bell Tel. & Tel. Co.*, 495 F. Supp. 356, 362 (D.S.C. 1979) (quoting *Ford v. Atl. Coastline R.R.*, 168 S.E. 143 (S.C. 1932)). In other words, in order to sustain a claim for gross negligence, Trustee must plead and prove reckless, willful, or wanton conduct "committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights." *Rogers v. Florence Printing Co.*, 106 S.E.2d 258 (S.C. 1958). South Carolina courts recognize gross negligence only "when the defendant has failed to exercise a slight degree of care." *Pilot Indus.*, 495 F. Supp. at 362 (citing

9

*Wilson v. Etheredge*, 52 S.E.2d 812 (S.C. 1949)). "Proof of error or mistake alone has been held to be insufficient to make out a case of gross negligence." *Id.* (citing *Halsted v. Postal Telephone Co.*, 85 N.E. 1078 (N.Y. 1908)). Additionally, in the context of negligence actions, South Carolina law defines reckless, willful, and wanton conduct as that conduct which evinces a conscious failure to exercise due care. *Berberich v. Jack*, 709 S.E.2d 607, 612 (2011) (citing *Yaun v. Baldridge*, 134 S.E.2d 248, 251 (1964)).

As the basis for his negligence claims, Trustee alleged that SunTrust owed numerous duties to IPG, including: (a) to exercise due care in accounting for and documenting foreign exchange transactions; (b) to properly supervise its employees in its foreign exchange system; (c) to develop and enforce a system of internal controls to comply with federal banking laws; (d) to engage in safe and sound banking practices; and (e) to comply with federal rules and regulations; and (f) to provide IPG and its clients due diligence as required by the USA Patriot Act and the Financial Crimes Enforcement Network. (ECF No. 5-1 at 9.) The Complaint did not cite any agreement, written or otherwise, between SunTrust and IPG wherein SunTrust assumed these specific duties. (*See id.*) As to the conduct that allegedly constitutes breach, Trustee pled simply: "Notwithstanding these duties, Defendant breached these duties in a negligent, grossly negligent, wanton, or reckless manner." (*Id.*)

The Bankruptcy Court correctly found that IPG agreed to be bound by and acknowledged receipt of Suntrust's Rules and Regulations for Deposit Accounts ("Rules and Regulations"), which provide, in pertinent part, that "SunTrust may discontinue or refuse to offer you any account, service or product at any time." (ECF No. 67-2 ¶ 65.) The Rules and Regulations further state:

**Liability Limitation**

[SunTrust] shall not be liable for any liability, loss or damage that may arise when we are acting in accordance with applicable laws, regulations, rules, these rules and regulations, or our agreements with any financial institutions regarding the transaction of your business under the Account or by any acts or conditions beyond our control.

\*\*\*

We shall only be liable for your damages, as provided in this Section, caused by our *gross negligence or wanton and intentional misconduct*.

(Scott Aff., Ex. M (Rules and Regulations), ECF No. 45-4 at 246 (emphasis added).) The Bankruptcy Court further found that IPG agreed to and was bound by the Terms and Conditions for Foreign Exchange ("FX Terms and Conditions") which incorporated the Rules and Regulations. (ECF No. 67-2 ¶ 67.) The FX Terms and Conditions state that IPG agrees to hold SunTrust harmless for any and all damages arising from actions taken pursuant to their agreements, except to the extent that such damages are finally determined to have been directly caused by SunTrust's gross negligence or willful misconduct. (IPG 30(b)(6) Dep., Ex. 8 (FX Terms and Conditions), ECF No. 33-3 at 11.)

SunTrust's first argument in its objections regarding the negligence cause of action is that Trustee's negligence claims cannot survive summary judgment because SunTrust acted in accordance with its agreements with IPG, rendering Trustee's negligence claims expressly barred. (ECF No. 67-5 at 4-5 (citing *Matkin v. Fid. Nat'l Bank*, C/A No. 6:01-2189-24, 2002 WL 32060182, at *3 (D.S.C. July 11, 2002) (granting defendant bank's motion for summary judgment motion on plaintiff customer's negligence claim where agreement between bank and customer limited bank's duties and bank acted in accordance with agreement).) SunTrust asserts that its contract with IPG permitted it to act in the precise manner alleged by Trustee upon receiving the

report of Pfaff's defalcations, namely, to discontinue various services and products. (ECF No. 67-5 at 5.) If SunTrust acted in accordance with its agreement with IPG, the logic goes, SunTrust cannot be held liable for simple negligence related to those actions. *See First Federal Sav. and Loan Ass'n of South Carolina v. Dangerfield*, 414 S.E.2d 590, 594 (S.C. Ct. App. 1992) (affirming lower court's grant of summary judgment where no genuine issue of material fact existed regarding bank's alleged wrongdoing because contract expressly permitted bank to act as it did). SunTrust supports this position by citing a Court of Appeals of South Carolina case in which the court found that a restriction on negligence claims (similar to that found in the Rules and Regulations) was enforceable where the parties' agreement contained explicit and unambiguous language limiting the defendant's liability. *See McCune v. Myrtle Beach Indoor Shooting Range, Inc.*, 612 S.E.2d 462, 464-66 (S.C. Ct. App. 2005) (holding an exculpatory clause enforceable to preclude a negligence action where plaintiff sued defendant business for injuries sustained while participating in a paintball game). Defendant argues that the Bankruptcy Court failed to consider the contractual provisions limiting liability and that the Proposed Order should be modified to grant dismissal of the negligence claim accordingly.

Trustee responds that the "boilerplate" disclaimer in SunTrust's Rules and Regulations should be narrowly construed and does not apply to SunTrust's alleged misconduct in this case. (ECF No. 69-1 at 8.) After acknowledging a recent trend of South Carolina courts to enforce exculpatory clauses, Trustee states that the trend is not without limitation. (*Id.*) Specifically, Trustee cites *S.C. Elec. & Gas Co. v. Combustion Eng'g, Inc.*, 322 S.E.2d 453 (S.C. Ct. App. 1984) for the concepts that: (1)

contracts that seek to exculpate a party from liability for the party's own negligence are disfavored, and (2) an exculpatory clause is to be strictly construed against the party relying thereon and will not exempt that party from liability for negligence in the absence of explicit language clearly indicating that such was the intent of the parties. *Id.* at 458 (citing *Pride v. Southern Bell Telephone & Telegraph Co.*, 138 S.E.2d 155 (S.C. 1964); *Hill v. Carolina Freight Carriers Corp.*, 71 S.E.2d 133, 137 (1952)). Trustee argues that the exculpatory provision in the Rules and Regulations should not "insulate SunTrust from liability for precipitously and without any notice terminating IPG's access to SunTrust's online systems," should not "allow[] SunTrust to delete vital records," and should not "insulate SunTrust from exposure for giving Eric Pfaff access to unauthorized accounts." (ECF No. 69-1 at 9.) Additionally, Trustee attempts to distinguish *Matkin* by stating that the fact pattern in that case, wherein the plaintiff sought to impose liability for negligence on the custodian of his self-directed IRA for allowing him to make poor investment decisions, bears no resemblance to the complexities of the SunTrust/IPG relationship. (ECF No. 69-1 at 10.)

The Court generally agrees with Defendant on the point that the liability limitation clause in the Rules and Regulations is enforceable to preclude actions sounding in simple negligence when SunTrust is acting in accordance with the parties' agreements. Of course, the question then becomes whether SunTrust was acting in accordance with the parties' agreements when it conducted itself in the manner alleged by Plaintiff. This question becomes considerably more complex when Plaintiff pleads in the manner exemplified here, with broad, imprecise theories of duties owed (*see* ECF No. 5-1 ¶ 41) and entirely conclusory allegations of breach utterly lacking in any specificity (*see id.*

¶ 42). The Bankruptcy Court was doing its best to analyze this gestalt pleading scheme in light of the record when it cited "some evidence of a lack of internal controls over the foreign exchange department," and a "dispute regarding the appropriateness of SunTrust's actions in response to the report of Pfaff's theft" (*see* ECF No. 67-2 at 33) as its reasons for recommending that summary judgment be denied on the negligence and gross negligence cause of action. But in the view of the undersigned, and as explained more fully *infra*, as soon as Plaintiff's expansive theories of negligence liability are distilled to specific alleged conduct (e.g. termination of access to the OTM and OFX systems, putative deletion of account records, and supposed facilitation of Pfaff's access to unauthorized accounts (*see* ECF No. 69-1 at 9)), the record indicates either that SunTrust owed no duty or that there is no evidence of breach, and summary judgment is therefore appropriate.

SunTrust's second argument states that in order for the Trustee's gross negligence claim to survive, there must be some evidence that SunTrust engaged in an intentional, conscious failure to do a thing it was required to do, or a similarly conscious doing of something it knew it ought not to have done. (ECF No. 67-5 at 6 (citing *Pilot Indus.*, 495 F. Supp. at 362; *Toney v. LaSalle Bank Nat. Ass'n*, 896 F. Supp. 2d 455 (D.S.C. Sept. 25, 2012); *Steinke v. S.C. Dept. of Labor, Licensing & Reg.*, 336 S.C. 373, 520 S.E.2d 142, 153 (1999).) SunTrust avers that Trustee has not presented any evidence of such intentional or conscious wrongdoing by SunTrust toward IPG, and notes that the Proposed Order contains no finding to support wrongdoing of this ilk. With regard to the withdrawal of IPG's access to OTM and OFX specifically, SunTrust argues that it cannot be grossly negligent for acting in accordance with its express contractual

right to discontinue a product or service at any time. (ECF No. 67-5 at 6; *see* ECF No. 67-2 ¶ 65.) Without some evidence to support this element of a gross negligence claim, that is, proof of an error or wrongdoing beyond mistake alone, *see Pilot Indus.*, 495 F. Supp. at 362, Trustee's claim fails at summary judgment. *See Richardson's Restaurants*, 403 S.E.2d at 672.

Trustee does not squarely respond to Defendant's objection regarding the gross negligence claim, except to say that the Bankruptcy Court had no obligation to make specific findings to substantiate its conclusion that the claim should proceed to a trier of fact. (ECF No. 69-1 at 1-2.) Trustee cites Fed. R. Civ. P. 52(a)(3), which states, "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 , or unless these rules provide otherwise, on any motion." *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) ("There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

This Court holds that the findings in the Proposed Order do not support a conclusion that a genuine issue of material fact exists with regard to the gross negligence claim. The Court further finds that the Trustee has not produced any evidence to support the required element of intentional or conscious wrongdoing, or willful and wanton misconduct. *See Pilot Indus.*, 495 F. Supp. at 362 (granting defendant's motion for summary judgment due to plaintiffs' failure to show willful and wanton conduct to support gross negligence claim); *Landrum v. Spartanburg Cty.*, C/A

No. 7:10-cv-00007, 2011 WL 3652291 at *6 (unpub'd) (D.S.C. Aug. 18, 2011) (granting defendant's motion for summary judgment on plaintiff's gross negligence claim where plaintiff failed to provide evidence of a conscious failure to exercise due care); *see also In re Palm Beach Finance Partners, L.P.*, 488 B.R. 758, 780 (Bankr. S.D. Fla. 2013) (granting defendant bank's motion to dismiss plaintiff trustee's gross negligence claim in an adversary proceeding brought on behalf of depositor/debtor because nothing in the trustee's allegations distinguished the claim from an ordinary negligence claim or indicated conscious wrongdoing, and the gross negligence claim therefore failed to state a plausible claim on its face).

The Court has considered all of the evidence in the light most favorable to Plaintiff in this action, specifically assuming the truth of Plaintiff's allegation that immediate withdrawal of IPG's access to OTM and OFX harmed IPG financially. Nevertheless, on the record currently before the Court, the assertion of gross negligence remains "wholly speculative" and is insufficient to withstand summary judgment, *see Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), because there is no evidence that withdrawal of said access was reckless, wanton, or willful wrongdoing. Rather, the undisputed evidence indicates that the decision to discontinue IPG's OTM and OFX access was made *after* IPG's President and sole shareholder, Clifford Burgess ("Burgess"), in a meeting with local SunTrust management personnel, reported that Pfaff had stolen an indeterminately large amount of funds from IPG (in the several hundred thousand to multi-million dollar range), that Burgess was uncertain whether other IPG employees were involved, that he was considering shutting IPG down, that he had ceased trading, and that he had consulted

with bankruptcy counsel. (Beard Dep., ECF No. 49-5, p. 40, ll. 25, p. 41, ll. 1-25. p. 42, ll. 1-4, 25, p. 43, ll. 1-25, p. 44, ll. 1-25, p. 45, ll. 1-25, p. 46, ll. 1-2, p. 47, ll. 22-25; p. 48, ll. 1-22, p. 50, ll. 18-25, p. 51, ll. 1-2; Harrill Dep., ECF No. 42-3, p. 30, ll. 19-25, p. 31, ll. 1-25, p. 32, ll. 1-25, p. 33, l. 1, p. 34, ll. 1-25, p. 35, ll. 1-25, p. 36, ll. 1-6, p. 37, ll. 1-22, p. 39, ll. 5-25, p. 40, ll. 1-13; Graham Dep., ECF No. 50-3, p. 42, ll. 17-25, p. 46, ll. 21-25, p. 47, ll. 1-9, p. 48, ll. 1-19; Collins Dep., ECF No. 50-1, p. 37, ll. 6-25, p. 38, ll. 1-25, p. 39, ll. 1- 25, p. 40, ll. 1-13, p. 41, ll. 7-25, p. 42, ll. 1-8, p. 143, ll. 17-25, p. 144, ll. 1-3, p. 161, ll. 24-25, p. 162, ll. 1-24.) As such, Defendant's objection is sustained, summary judgment is granted with respect to this claim, and the Proposed Order is modified accordingly.

SunTrust's third argument in support of modifying the Proposed Order with respect to the negligence cause of action is that the absence of evidence in the record showing that SunTrust owed IPG a generalized duty of care sounding in negligence, the failure by Trustee to identify any such evidence, and the absence of any finding by the Bankruptcy Court that such a duty existed, necessarily yield a conclusion that there is no genuine issue of material fact as to Trustee's negligence claims. (ECF No. 67-5 at 7-8 (citing *AttorneyFirst, LLC v. Ascension Entm't, Inc.*, C/A No. 06-2320, 2007 WL 2733349, at *1 (unpub'd) (4th Cir. September 20, 2007) (affirming district court's grant of summary judgment to defendant where defendant owed no duty of care to plaintiff, noting that "no action for negligence will lie without a duty broken")).) Under South Carolina law, "'An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstances.'" *Cowburn v. Leventis*, 619 S.E.2d 437, 451 (S.C. Ct. App. 2005) (quoting *Charleston Dry Cleaners*

*Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588 (S.C. 2003)) (affirming trial court's granting of summary judgment on negligence claim in favor of defendant bank where investor in Ponzi scheme sued bank for its role as the conduit for investor's participation in the scheme). "'The Court must determine, as a matter of law, whether the law recognizes a particular duty.'" *Cowburn*, 619 S.E.2d at 451. In the absence of evidence of a duty owed, a negligence claim fails at summary judgment. *See Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 277 (S.C. 2003) (answering certified question by finding no duty sounding in negligence on the part of credit card issuing banks to protect potential victims of identity theft).

Trustee's response to SunTrust's arguments regarding the lack of any showing of a general duty sounding in negligence is not directly on point. Trustee lumps together his analysis of whether SunTrust owed IPG duties sounding in negligence with his assertion that the "special relationship" between SunTrust and IPG gave rise to a fiduciary duty on the part of SunTrust, and should not be categorized as a typical borrower/lender or bank/depositor relationship. (*See* ECF No. 69-1 at 2-6.) The Court provides a separate analysis of the breach of fiduciary duty claim *infra*, and declines to conflate that issue with the question of the viability of Trustee's negligence claims.

South Carolina courts and the Fourth Circuit Court of Appeals have both affirmed the principle that there is no overarching duty of care between a bank and its customers. *See Regions Bank v. Schmauch*, 582 S.E.2d 432, 443 (S.C. Ct. App. 2003); *Van Leer v. Deutsche Bank Secs., Inc.*, C/A No. 11-1520, 2012 WL 1522359, at *6 (unpub'd) (4th Cir. 2012) ("Dealings between a bank and its customer generally do not allow for claims sounding in negligence. In such an instance, the relationship between

18

the bank and customer is contractual in nature, not giving rise to an independent duty."); *see also Citizens & S. Nat'l Bank of S.C. v. Lanford*, 443 S.E.2d 549, 551 (S.C. 1994) (holding that the law does not impose a duty on a bank to explain to an individual what he could learn from reading a contract, and therefore summary judgment was appropriately granted where guarantor claimed the bank was negligent in failing to explain that his liability was for the entire loan amount). Applying these concepts to the two bases given by the Bankruptcy Court for its recommendation that SunTrust's Motion be denied with respect to the negligence claims, the Court finds that those bases do not give rise to duties sounding in negligence and that summary judgment is therefore appropriate.

First, the Bankruptcy Court notes that the record includes "some evidence of a lack of internal controls over the foreign exchange department at SunTrust." (ECF No. 67-2 at 33.) However, any responsibility on the part of SunTrust to maintain particular controls over its foreign exchange department that is material to this case was governed by the agreements between the parties. In other words, SunTrust either performed its contractual duties toward IPG, or it did not; therefore, it should not be subject to negligence liability simply because an *ex post* analysis of its management practices revealed some weaknesses either wholly unconnected or only tangentially related to its relationship with IPG. Trustee has not identified any specific statutory or contractual provision that created a duty of care, and generalized assertions such as, *inter alia*, failure "to develop and enforce a system of internal controls to comply with federal banking laws," failure "to properly supervise [] employees in [Suntrust's] foreign exchange system," and failure "to comply with Federal rules and regulations" (ECF No.

5-1 ¶ 41), will not suffice to preclude the entry of summary judgment.

Second, the Bankruptcy Court notes a "dispute regarding the appropriateness of SunTrust's actions in response to the report of Pfaff's theft" as a reason to deny summary judgment. (ECF No. 67-2 at 33.) Again, SunTrust's responsibilities toward IPG were defined *in their agreements*. It is undisputed that IPG acknowledged receipt of the Rules and Regulations and agreed to be bound by them. One obvious reason why SunTrust would include a clause indicating its contractual ability to discontinue or refuse to offer a service or product at any time is as a protectionary measure against risks borne by the Bank in the course of its dealings, which may become unacceptable risks under a particular set of circumstances. That appears to be what happened in this case.

There is no evidence in the record to show that SunTrust failed to complete pending transactions in the OTM and OFX systems at the time IPG's access was withdrawn. Hence the Bankruptcy Court's recommendation that summary judgment is appropriate on the tortious interference with contractual relations cause of action. (*See* ECF No. 67-2 at 34-35.) There is likewise no evidence in the record to show that IPG accounts were "deleted" from these systems. Rather, IPG's access was *disconnected*, rendering it unable to conduct further business through these systems without employing other means of contact with SunTrust. (Pease Dep., ECF No. 65-4, p. 205, ll. 23-25, p. 206, ll. 1-19.) Moreover, the question of whether SunTrust exercised an appropriate degree of care in discontinuing IPG's access to online account management and trading must necessarily be asked in the context of the parties' contractual obligations. In addition to its rights under the Rules and Regulations, SunTrust had the right, pursuant to the OTM Access Agreement to terminate IPG's

access to the OTM system at any time, effective immediately, upon written notice and IPG agreed that, in the event it was unable to access OTM or transact or conduct business through OTM, it would do so through other means. (Graham Dep., ECF No. 50-3, p. 33, ll. 3-25, p. 34, ll. 1-9, Ex. 1 (OTM Access Agreement), pp. 1, 3.)

SunTrust does not contest that it failed to provide *written* notice prior to disconnecting IPG's online access after Pfaff's defalcations were reported; however, it is undisputed that SunTrust provided *actual* notice to Burgess by telephone the day before disconnection occurred and subsequent to the in-person meeting between Burgess and SunTrust management personnel described above. (Collins Dep., ECF No. 50-1, p. 38, ll. 23-25, p. 39, ll. 1-25, p. 40, ll. 1-25, p. 41, ll. 4-24, p. 42, ll. 2-20, p. 43, ll. 1-2.) Written notice memorializing the pending discontinuation of *all financial services* previously provided by SunTrust to IPG was provided five days later in a letter from Gary Collins, a Senior Vice President at SunTrust, to Burgess. (Collins Dep., Ex. 4, ECF No. 50-1 at 26-27.) The letter requests that IPG close its accounts immediately, and provides a date upon which the Bank would close the accounts unilaterally if IPG failed to do so. (*Id.*) The Court finds that in the context of *actual* notice undisputedly provided to IPG's President prior to the suspension of online account access, the failure to provide *written* notice does not constitute a *material* fact with respect to the negligence claims, in that the existence of this technical failure to comply with the terms of the OTM Access Agreement would not affect the disposition of the claim under applicable law. *See Anderson*, 477 U.S. at 248; *Clardy v. Bodolosky,* 679 S.E.2d 527, 531 (S.C. Ct. App. 2009) (holding that where contract does not expressly make strict compliance essential, substantial compliance is sufficient); 14 Williston on Contracts § 44:52 (4th ed.) (prior

common law requirement of strict and literal compliance with the terms of a contract has relaxed over time in favor of a substantial compliance standard); *see also Rome Healthcare LLC v. Peach Healthcare System, Inc.*, 590 S.E.2d 235, 241 (Ga. Ct. App. 2003) ("The general rule in determining contract compliance is substantial compliance, not strict compliance . . . and this rule applies to a contract's termination clause as well."). Additionally, Pfaff testified that although it would have been much more difficult than using the online systems and could not have sustained anywhere near the same volume of transactions, IPG could have operated without access to OTM and OFX by way of phone and email contact with SunTrust. (Pfaff Dep., ECF No. 40-1, p. 481, ll.15-25.)

In sum, Trustee has failed to produce evidence that SunTrust had a duty to continue providing OTM and OFX system access, and the Court will not assume the existence of that purported duty. In the absence of such proof, the Court is left with the plain language of various agreements between the parties that permitted SunTrust to discontinue online account access immediately. Thus, the Court finds that there is no genuine issue of material fact with respect to the "appropriateness" of SunTrust's actions in response to the report of Pfaff's theft. *See Huggins*, 585 S.E.2d at 277 (holding that, absent evidence of a duty owed, negligence claims fail).

Furthermore, there is no evidence in the record to substantiate Trustee's initial theory that a lack of internal controls over the foreign exchange department at SunTrust, in the form of non-specific "unauthorized payment orders," "mishandling of accounts," "improper record-keeping," embezzlement by Julianne Gingrich and Christy Ward, and the like, somehow contributed to IPG's demise (*see e.g.* ECF Nos. 5-1 at 6; 15-1 at 2

n.1, 5, 8-10). In other words, despite two years of exhaustive discovery, Trustee was unable to develop a genuine issue of material fact with respect to the actions of Gingrich, Ward, or any other SunTrust employee, showing that purported management failings at SunTrust led to "missing" funds or IPG's financial failure. The Bankruptcy Court rightly concluded that the dishonesty of Gingrich and Ward, both of whom worked in the SunTrust department that handled IPG's accounts, though certainly an interesting coincidence, had not been shown to be connected to any alleged "missing" funds or to IPG's decline. (*See* ECF No. 67-2 ¶ 4.) Putting aside the intrigue resulting from the personal failings of those two SunTrust employees, Trustee's allegation that a lack of controls at SunTrust is causally related to IPG's failure amounts to speculation unsupported by the evidence in the record.

As with any summary judgment motion, "the court must draw any permissible inference from the underlying facts established in the record in the light most favorable to the non-moving party." *Austin v. Clark Equipment Co.*, 48 F.3d 833, 835 (4th Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). And, "it is the province of the jury to resolve conflicting inferences from circumstantial evidence." *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958)) (quotation marks and alteration omitted). "Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* (quotation marks omitted). The Court finds that the remainder of Trustee's negligence-based claims not already discussed and disposed of

*supra*, rest entirely on speculation and conjecture and are unsupported by the evidence. Consequently, Defendant's objections regarding the Proposed Order's conclusions with respect to the negligence and gross negligence cause of action are sustained, the Motion for Summary Judgment on that claim is hereby granted, and the Proposed Order is modified accordingly.

### B. Breach of Fiduciary Duty

Defendant next objects to the Bankruptcy Court's recommendation that summary judgment be denied as to Trustee's cause of action for breach of fiduciary duty, specifically the following language from the Proposed Order:

> The Trustee has pointed to portions of the record that as a matter of law could support his claim that there was a fiduciary relationship between SunTrust and IPG. There are facts in the record sufficient to present a genuine dispute on this issue. The relationship between the parties was unusual and likely more than a debtor/creditor relationship. Therefore, a weighing of the facts is necessary to determine whether a fiduciary relationship existed between the parties.
>
> However, the record must also show a breach of that duty and resulting damages. Although IPG or its creditors clearly suffered a shortage of funds as a result of some problem, the evidence must implicate SunTrust in some way. The record includes evidence to support this element. Trustee argues that SunTrust breached its fiduciary duty by cutting off IPG's access to SunTrust's OFX and OTM systems and without this access, IPG was not only unable to track customers' funds but its ongoing business came to an end. While this appears to be an overly simplistic explanation of IPG's demise, there are sufficient facts in the record to create a dispute of fact as to whether this act of SunTrust played a role. Therefore, there is a dispute of fact and summary judgment is not appropriate.

(ECF No. 67-2 at 34.) Defendant asserts that the Bankruptcy Court: (a) did not consider that IPG explicitly agreed in the Rules and Regulations that SunTrust owed IPG no fiduciary duty, and therefore the existence of a fiduciary relationship is contractually precluded; and (b) improperly based its denial of SunTrust's Motion as to this claim on

the Trustee's argument that SunTrust breached its fiduciary duty by cutting off IPG's access to the OTM and OFX systems, despite the fact that the parties' agreements granted SunTrust the legal right to discontinue these and any other services at any time. (ECF No. 67-5 at 12.) Therefore, argues Defendant, the Proposed Order should be modified to grant SunTrust's Motion as to Trustee's breach of fiduciary duty claim. (*Id.*)

As correctly stated in the Proposed Order, in order to succeed on a breach of fiduciary duty claim, "the Trustee must show the existence of a fiduciary relationship owed by SunTrust to IPG, a breach of that duty, and damages proximately resulting from the breach." (ECF No. 67-2 at 33 (citing *RFT Mgmt. Co., LLC v. Tinsley & Adams, LLP*, 732 S.E.2d 166, 173 (S.C. 2012).) "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 68 (S.C. 2005) (citing *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 716 (S.C. 2003)). "'Courts of equity have carefully refrained from defining the particular instances of fiduciary relationship in such a manner that other and perhaps new cases might be excluded and have refused to set any bounds to the circumstances out of which a fiduciary relationship may spring.'" *Armstrong v. Collins*, 621 S.E.2d 368, 376 (S.C. Ct. App. 2005) (quoting *Island Car Wash, Inc. v. Norris*, 358 S.E.2d 150, 152 (S.C. 1987)). The determination regarding the equitable issue of whether a fiduciary relationship exists is to be made by the Court. *Cowburn*, 619 S.E.2d at 447 (citing *Hendricks*, 578 S.E.2d at 715).

Defendant first argues that IPG's breach of fiduciary duty claim is barred by

contract. In support of this assertion, SunTrust cites the Rules and Regulations, which IPG received and to which it was bound (*see* ECF No. 67-2 ¶¶ 65, 67), and which explicitly state that the relationship between SunTrust and IPG was *not fiduciary in nature*. (Scott Aff., Ex. M (Rules and Regulations), ECF No. 45-4 at 220; Ex. L, ECF No. 45-4 at 178; Ex. K, ECF No. 45-4 at 134); *see Cowburn*, 619 S.E.2d at 449 (granting summary judgment on fiduciary duty claim where language in parties' agreement limited bank's duties toward customer and emphasized that bank did not advise customer on investment decisions); *Vercon Construction, Inc. v. Highland Mortgage Co.*, 2005 WL 6158875 at *5 (D.S.C. 2005) (citations omitted) ("Instructively, South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature."); *see also In re Palm Beach Finance Partners, L.P.*, (488 B.R. at 781-82) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)) (dismissing plaintiff trustee's claim against defendant bank for breach of fiduciary duty where, per terms of applicable agreement, bank did not undertake duty to act as fiduciary to debtor, and plaintiff could therefore not plausibly establish that bank accepted trust and confidence required to create a fiduciary duty, and court could not "draw the reasonable inference that [the bank] accepted in any way the trust and confidence the [plaintiff] allegedly placed in it"). The applicable language from the Rules and Regulations states:

> All Accounts are subject to these Rules and Regulations . . . You acknowledge and agree that the relationship between you and the Bank created by the opening of an Account is of debtor and creditor and that the Bank is not in any way acting as a fiduciary for you or for your benefit and that no special relationship exists between you and the Bank.
>
> ***
> These Rules and Regulations constitute a contract and agreement between you and the Bank.

(Scott Aff., Ex. M, ECF No. 45-4 at 220.) In his deposition, Trustee testified that he was not aware of any document that contractually created a confidential or fiduciary relationship between IPG and SunTrust. (Fort Dep., ECF No. 41-1, p. 99, ll. 1-22.)

Given the language in the Rules and Regulations, and Plaintiff's failure to introduce any contradictory document, Defendant argues that: (a) SunTrust was not IPG's fiduciary; (b) IPG knew that SunTrust was not acting as a fiduciary for IPG; (c) SunTrust was unaware of and never agreed to accept any special trust allegedly reposed in it by IPG; and (d) any such alleged reliance by IPG was unreasonable. (ECF No. 67-5 at 13.) Defendant cites the principle under South Carolina law that "[a]s a general rule, a fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence place in him." (*Id.* at 67-5 at 13-4 (quoting *Regions Bank*, 582 S.E.2d at 444 (granting summary judgment in favor of bank on breach of fiduciary duty claim, noting that "no fiduciary relationship between a bank and its depositor exists when the bank is unaware of any special trust reposed in it," and finding summary judgment further appropriate because, even if such special trust had been extended by customer, there was no evidence that bank was aware of or agreed to accept such trust)).) Because the Proposed Order did not address the contractual disclaimer of a fiduciary relationship, avers Defendant, the Bankruptcy Court's recommendation against granting summary judgment on the breach of fiduciary claim was faulty and should be modified by this Court in favor of granting summary judgment in full. (*Id.* at 15.)

Trustee responds that the "boilerplate" disclaimer of a fiduciary relationship contained in the Rules and Regulations is triggered by the opening of the account in

question. (ECF No. 69-1 at 11; *see* ECF No. 45-4 at 220.) As such, asserts Trustee, there can be no legal basis for applying the disclaimer to the "FCTA account," which Trustee claims was "unauthorized" (in that it was never properly opened) and "all evidence suggests is the source of the losses."[5] (ECF No. 69-1 at 11.) Trustee further argues that the presence or absence of a fiduciary duty is dependent upon the particular facts and circumstances of the relationship, and it would be illogical to allow a "label" imposed by a "boilerplate" clause to control over the actual facts and circumstances at issue. (*Id.* (citing *Kahn v. BDO Seidman, LLP*, 948 N.E.2d 132, 155-56 (Ill. Ct. Ap. 2011), *aff'd sub nom. Khan v. Deutsche Bank AG*, 978 N.E.2d 1020 (reversing trial court's grant of investment bank's motion to dismiss and holding a contractual disclaimer of fiduciary duties ineffective because investors and bank had a preexisting fiduciary relationship)).)

The Court agrees with this point to the extent that it is the *nature of the*

---

[5] The Court would comment that despite repeated assertions and speculation peppered throughout Trustee's briefing that SunTrust gave Pfaff and other unidentified users "unauthorized" access to existing SunTrust accounts or permitted Pfaff and/or others to open new accounts in an "unauthorized" manner, the record is devoid of evidence to support these claims. Trustee uses the term Foreign Currency Transaction Accounts ("FCTA") to refer to a conceptually confusing conglomeration of IPG's Multicurrency Account (*see* Proposed Order, ECF No. 67-2 ¶¶ 26-31, describing the account as IPG's "Foreign Exchange Account" ending in 1248) and separate, distinct accounts maintained by SunTrust with foreign banks for various reasons in SunTrust's name (*see id.* ¶¶ 32-40, describing SunTrust's "Nostro accounts"). Trustee's conflation of these accounts and terms is evidenced in his Opposition. (*See* ECF No. 61-1 at 2 n.1.) SunTrust's explanation of the difference between the accounts and the evidentiary basis for that distinction can be found in its Reply. (*See* ECF No. 64-1 at 17-21.) In any event, the Court finds that IPG's execution of the Foreign Exchange Authorization ("FX Authorization") and Certification for Foreign Exchange Authorization ("FX Certification") (Batts Aff., Ex. A, ECF No. 48-2 at 13-17), the Implementation Schedules submitted to SunTrust by IPG requesting User IDs for certain employees (Batts Aff. ¶ 7, ECF No. 48-1; Ex. B, ECF No. 48-2 at 19-27), and IPG's agreement to be bound by the FX Terms and Conditions are sufficient to demonstrate that IPG's establishment and use of the Multicurrency Account were authorized. (*See* Proposed Order, ECF No. 67-2 ¶¶ 26-31, 66-68; Reply, ECF No. 64-1 at 13-17.) Moreover, there is no evidence of record demonstrating that Pfaff or any other IPG employee had impermissible access to SunTrust's Nostro accounts (*see, e.g.*, Stacio Dep., ECF No. 63-1 at 112-13, p. 71 ll. 15-25, p. 72 ll. 1-4). Trustee's assertion that "movements by unauthorized users within the Nostro accounts" was "most likely how creditor funds became 'lost'" (*see* Opp., ECF No. 61-1 at 35-36) is pure conjecture. Additionally, the reasoning behind the Bankruptcy Court's recommendation that summary judgment be denied on the breach of fiduciary duty claim centers solely on SunTrust's discontinuation of IPG's access to the OFX and OTM systems, and makes no mention of any putative "unauthorized" account creation or access. (*See* ECF No. 67-2 at 33-34.)

*relationship* between IPG and SunTrust that determines whether a fiduciary duty exists. *See Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005) (citing *Pitts v. Jackson Nat'l. Life Ins. Co.*, 574 S.E.2d 502, 507 (S.C. Ct. App. 2002)) ("[T]o determine whether a fiduciary relationship existed, this court must look to the particulars of the relationship between the parties."). However, the presence of the contractual disclaimer here is at least some evidence of how SunTrust viewed the relationship from the outset, which is relevant to the questions of whether SunTrust was aware of any special trust reposed in it by IPG, and whether SunTrust accepted such reliance or it was unilaterally imposed. *See Regions Bank*, 582 S.E.2d at 444.

Regarding the nature of the relationship, Defendant argues that both the facts and the law support its claim that it was a creditor-debtor scenario, as is typical of customer-bank relationships in South Carolina. Defendant highlights the Bankruptcy Court's specific findings that IPG funds deposited with SunTrust were not segregated in any manner and that IPG used its deposit accounts not only for business-related reasons, but also to pay significant general operating expenses and personal expenses for Burgess and his wife. (*See* ECF No. 67-2 ¶¶ 18-19.) Moreover, Defendant notes, the Proposed Order contained no finding that SunTrust undertook to advise IPG in any manner (ECF No. 67-5 at 17), and it is only in such limited instances where "a bank undertakes to advise the customer as part of the services the bank offers . . . [or] the [customer's] funds are deposited into a special account or specifically designated to be kept separate," that a fiduciary relationship may arise between a bank and its depositor. *Rush v. S.C. Natl. Bank*, 343 S.E.2d 667, 668 (S.C. Ct. App. 1986) (citing *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975)).

Trustee responds that there is evidence showing a "special relationship" between SunTrust and IPG, in which special features made the relationship a fiduciary and confidential one and not the typical creditor-debtor relationship that exists between a bank and its depositor. (ECF No. 69-1.) Trustee asserts that the following evidence supports his view that the relationship was "special" in nature: (1) the SunTrust/IPG relationship operated as an "exception" to the existing SunTrust policy which barred doing business with money service businesses; (2) the IPG/SunTrust relationship was approved by a committee of SunTrust's Board of Directors and involved a review of financial information; (3) SunTrust allegedly exercised "domination and control" over IPG because IPG conducted its business exclusively using SunTrust's on-line systems; (4) SunTrust's Previous Day Balance Report was utilized exclusively to reconcile IPG's business activity; (5) SunTrust allegedly offered advice and counsel to IPG in connection with IPG opening an office in Geneva, Switzerland,[6] (6) SunTrust opened two foreign currency accounts ("Nostro accounts") in its own name in order to facilitate IPG's business needs (see Pease Dep., ECF No. 63-4, p. l26 ll. 7-25, p.127 ll. 1-25, p. 128 ll. 1-25, p. 129 ll. 1-3); (7) SunTrust performed a compliance audit in 2007 in which it vetted IPG's anti-money laundering policies; and (8) Randy Lambeth and Michael

---

[6] The Court would note that it is a *dramatic* overstatement to characterize the evidence Trustee cites in support of this assertion as the provision of "advice and counsel" by SunTrust to IPG. First, Trustee quotes an email from Michael Stacio, SunTrust's FX Director of Currency Risk Management, to Burgess which states: "Cliff, I know you must be very busy . . . but I wanted to see if you would be interested in talking with my colleagues Walt Pickell, Phil Harrison and myself regarding contracts in Switzerland who [sic] be of value as you get up and running over there." (*See* Opp., ECF No. 61-1 at 15-16.) Here, Trustee is quoting Exhibit 7 from the Stacio deposition, which is not included as an attachment to his Opposition. (*See* ECF No. 63-1 at 113-14 (Stacio Dep. excerpt ends and exhibits begin with Ex. 8).) Next, Trustee cites, without explanation, an email chain regarding SunTrust's establishment of foreign accounts at UBS and LaCaixa Bank to service IPG's needs, and an email chain wherein Stacio is inquiring as to the status of a potential IPG client. (*See* ECF No. 61-1 at 16 (citing Stacio Dep., Exs. 12 & 14, ECF No. 63-1 at 117-128).) Needless to say, the evidence presented, even when viewed in the light most favorable to Trustee, is wholly unconvincing to support the assertion of an advisory relationship between SunTrust and IPG that rises to the level of fiduciary status. The cited emails strike the undersigned as routine communications between two companies engaged in the business of foreign exchange.

Stacio of SunTrust worked together with Burgess to author a letter from SunTrust to the CFO of a potential client, Belgian firm Bonita, to describe the way currency transfers would be cleared through SunTrust should Bonita become IPG's client (*see* Lambeth Dep., Ex. 2, ECF No. 63-1 at 2; Stacio Dep., Exs. 8 & 9, ECF No. 63-1 at 114-116). (ECF No. 69-1 at 3-4.)

Trustee further argues that IPG's relationship with SunTrust bears no similarity to the "straightforward relationships" between banks and their customers typically cited for the principle that banks are not fiduciaries of their depositors. (ECF No. 69-1 (arguing all cases cited by Defendant are distinguishable).) Trustee cites *Steele v. Victory Sav. Bank*, 368 S.E.2d 91, 94 (S.C. Ct. App. 1988) for the notion that the debtor-creditor rule is not without exception, and a bank-depositor relationship may become a fiduciary one if the bank exceeds the scope of a contract and undertakes the responsibility of advising its customer as part of the relationship.[7] The actual holding in *Steele* was that the trial judge committed reversible error in directing a verdict for the remitter of a cashier's check on a breach of a fiduciary duty claim in the remitter's action against the bank for issuing a certificate of deposit in the name of an intermediary who delivered the cashier's check to the bank, rather than in the name of the remitter. *Id.* The *Steele* court found that it was for the jury to determine whether the intermediary was the remitter's agent, the extent of that agency, and whether the remitter reposed special confidence and trust in the bank that would give rise to a fiduciary relationship; thus, a directed verdict had been improperly granted. *Id.* Accordingly, the holding in *Steele* hardly supports Trustee's assertion that summary judgment in Defendant's favor would be

---

[7] Trustee purports to quote language from *Steele* as the holding of the case (*see* ECF No. 69-1 at 5); however, the quoted language is not present in the *Steele* ruling.

inappropriate here.

Trustee also cites *Dallaire v. Bank of Am., N.A.*, 738 S.E.2d 731 (N.C. Ct. App. 2012) ("*Dallaire I*"), for the notion that summary judgment was inappropriately granted on a plaintiff's breach of fiduciary duty claim where the evidence showed that, in connection with the solicitation of a refinancing loan, the bank represented that its loan would have priority, because "[w]hen the facts are viewed in the light most favorable to [the plaintiffs] . . . there [was] a question of fact as to whether or not the circumstances of the parties' interaction prior to signing the loan [gave] rise to a fiduciary relationship and consequently created a fiduciary duty for [the defendant]." (*See* ECF no. 69-1 at 5-6 (quoting *Dallaire I*, 738 S.E.2d at 735).) Thus, in *Dallaire I* the Court of Appeals of North Carolina reversed the trial court's entry of summary judgment in the defendant-mortgagee bank's favor, indicating that this purported factual dispute precluded summary judgment on the plaintiff-mortgagors' fiduciary duty claim. *Id.* at 735. However, more recently in *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263 (N.C. 2014) ("*Dallaire II*") the North Carolina Supreme Court overruled the Court of Appeals and reinstated the trial court's grant of summary judgment. *Id.* at 267. After acknowledging the existence of a limited set of circumstances in which a bank-customer relationship can be transformed into a fiduciary one, the *Dallaire II* court stated:

> Those circumstances are not present in the case at hand. A loan officer's mere assertion that the [plaintiffs] "could obtain a first priority lien mortgage loan," [*Dallaire I*], 738 S.E.2d at 735, is insufficient to take the parties' relationship out of the borrower-lender context or transform it from arm's length to fiduciary. When taken in the light most favorable to the [plaintiffs], the record provides no basis for concluding that they reposed in the [bank] loan officer the special confidence required for a fiduciary relationship. *See Green v. Freeman*, 749 S.E.2d 262, 268 (N.C. 2013); *see also Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 699 ("[A]n ordinary debtor-creditor relationship generally does not give rise to

> such a 'special confidence'. . . ."). Thus, the trial court did not err in granting summary judgment for [the bank] on the [plaintiffs'] breach of fiduciary duty claim.

*Dallaire II*, 760 S.E.2d at 267. Consequently, to the extent the *Dallaire* case can be analogized to the case *sub judice*, the end result supports SunTrust's arguments, not Trustee's.

The imposition of a fiduciary duty upon a party constitutes a high standard of responsibility and should not been done lightly. *See Fisher v. Shipyard Vill. Council of Co-Owners, Inc.*, 760 S.E.2d 121, 128 n.2 (S.C. Ct. App. 2014), *reh'g denied* (Oct. 27, 2014), *cert. granted* (Mar. 19, 2015), *aff'd as modified*, 781 S.E.2d 903 (S.C. 2016) (quoting *O'Shea v. Lesser*, 416 S.E.2d 629, 632 (S.C. 1992)). Moreover, the mere fact that two business entities share common interests because their contractual relationship results in mutual profitability does not axiomatically mean that the relationship is fiduciary in nature. As the Supreme Court of South Carolina has explained:

> The term fiduciary implies that one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him. As a general rule, mere respect for another's judgment or trust in his character is usually not sufficient to establish such a relationship. The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.

*Burwell v. S.C.Nat. Bank*, 340 S.E.2d 786, 790 (S.C. 1986) (internal citations omitted) (finding no fiduciary relationship between guarantor of loan and bank that loaned funds to airline corporation, no evidence that bank representative was aware of any special trust reposed in him, and no reasonable basis for guarantor to believe that bank representative was acting on guarantor's behalf rather than on behalf of the bank). In *Steele v. Victory Sav. Bank*, the Court of Appeals of South Carolina provided a helpful

list of scenarios in which a fiduciary relationship has been found:

> By way of illustration, the appellate courts of this state have found fiduciary relationships to exist in the following cases: *Loftis v. Eck*, 341 S.E.2d 641 (S.C. Ct. App. 1986) (agent holding power of attorney in fiduciary relationship with his principal); *Lengel v. Tom Jenkins Realty, Inc.*, 334 S.E.2d 834 (S.C. Ct. App. 1985) (broker was a fiduciary of his client); *Matter of Moore*, 312 S.E.2d 1 (S.C. 1984) (attorney in fiduciary relationship with his client); *Landvest Assoc. v. Owens*, 274 S.E.2d 433 (S.C. 1981) (partners were fiduciaries to each other); *Duncan v. Brookview House, Inc.*, 205 S.E.2d 707 (S.C. 1974) (promoters of a corporation are fiduciaries to each other and to corporation); *Talbot v. James*, 190 S.E.2d 759 (S.C. 1972) (officers and directors of a corporation stand in fiduciary relationship to shareholders); *cf. Rush v. South Carolina National Bank*, 343 S.E.2d 667 (S.C. Ct. App. 1986) (bank and depositor may stand in a fiduciary relationship where bank undertakes to advise depositor as part of services bank offers). On the other hand, no fiduciary relationship between a bank and its depositor has been found where the bank officer was unaware of any special trust reposed in him. *Burwell v. South Carolina National Bank*, 340 S.E.2d 786 (S.C. 1986).

368 S.E.2d 91, 93 (S.C. Ct. App. 1988). None of the examples listed in *Steele* are analogous to the instant facts, and they are not persuasive to finding a fiduciary relationship under the circumstances present here.

Trustee urges this Court to believe that there is an "extensive record to show that the SunTrust/IPG relationship was anything but a garden variety bank/customer arrangement," and that Defendant's arguments for following the normal creditor-debtor rubric amounts to "cramming square factual pegs into round legal holes." (ECF No. 69-1 at 7.) But the Court disagrees. While it is certainly true that IPG was not a "typical" SunTrust customer—considering IPG's access to SunTrust's OTM and OFX systems, the volume of currency transactions made by IPG (both in number of trades and monetary amount), and the fact that their business relationship operated as an exception to SunTrust's general policy against servicing money service businesses (*see* ECF No. 67-2 ¶¶ 11-12, 55-56)—it is also true that the character of *what* IPG was doing

34

through SunTrust's systems did not differ significantly from the average depositor's relationship with the bank. IPG was depositing funds into general, non-segregated accounts (creditor) (*see id.* ¶¶ 16-25), creating a liability on the part of SunTrust (debtor), which would subsequently transmit those funds to IPG customers' beneficiaries in the appropriate foreign currency, less applicable fees and rates (*see id.* ¶¶ 46-54). In addition, IPG customers could deposit monies in foreign currencies into SunTrust's Nostro accounts, which monies were funneled through SunTrust's systems into IPG's Multicurrency Account for further disposition as IPG saw fit. (*See* ECF No. 67-2 ¶ 32-40.) The closest analogy that the Court can draw is that SunTrust operated as a sort of clearing house for IPG's foreign exchange business.

Notably absent from these activities is any conduct on the part of SunTrust that could be construed as "advice and counsel," and the Court now finds that there is no credible evidence in the record of an advisory relationship. Also absent from the record is any evidence that SunTrust held IPG funds in trust as alleged in the Complaint (*see* ECF No. 5-1 ¶¶ 13-14). At his deposition, Trustee testified that he was unaware of any representation or documents that created a trust account at SunTrust for the benefit of IPG. (Fort Dep., ECF No. 41-1, p. 102, ll. 24-25, p. 103, ll. 1-10, p. 105, ll. 15-24.) "To change a general account into a special account, there must be some act, at least on the part of the depositor, tending to segregate funds in the possession of the bank and to segregate them for a particular purpose." *Rush*, 343 S.E.2d at 668 (citing *Bradley Grain Co. v. Farmers & Merchants Nat'l Bank*, 274 S.W.2d 178 (Tex. Civ. App. 1954)). "A bank becomes charged with the duties of a trustee where it accepts funds, not as a general depositor creating a debtor–creditor relationship, but under an agreement to

handle an account for them in a fiduciary capacity." 10 Am. Jur. 2d Banks and Financial Institutions § 660. A trust account cannot be implied unless an understanding exists that money was deposited for a specific purpose and was not to be mingled. *See Rush*, 343 S.E.2d at 668-69 (citing cases). "The burden of proving an account is special is on the one claiming it." *Id.* at 668 (citing *Andrew v. Union Savings Bank & Trust Co. of Davenport*, 263 N.W. 495 (Iowa 1935)). The Court now finds that Trustee has not presented any evidence to satisfy this burden, and no trust was created between the parties. Rather, funds deposited into IPG's various accounts with SunTrust were not segregated in any manner and were routinely co-mingled. (ECF No. 67-2 ¶ 18; IPG 30(b)(6) Dep., ECF No. 32-2, p. 206, ll. 8-25, p. 207, ll. 1-2; Swanson Dep., ECF No. 41-3, p. 31, ll. 10-22; Pfaff Dep., ECF No. 39-2, p. 119, ll. 13-20, p. 121, ll. 22-25, p. 122, ll. 1-2).

In this context, the evidence cited by Trustee to support his assertion that SunTrust and IPG did not share a debtor-creditor relationship is unavailing. Trustee has failed to show that IPG had a reasonable foundation for the belief that SunTrust was acting not in its own behalf, but in the interest of IPG. *See Burwell*, 340 S.E.2d at 790. The Court also finds that there is no evidence that SunTrust knew of, accepted, or induced any special trust reposed in it by IPG, and that any such reliance was unilaterally imposed and insufficient to establish a fiduciary relationship. *See Regions Bank*, 582 S.E.2d at 444. SunTrust contracted with IPG to provide certain account services and systems access. Upon the report of Pfaff's defalcations, SunTrust perceived that the risk to its banking operation outweighed the benefit of its relationship with IPG, then withdrew and subsequently terminated IPG's access to its foreign

exchange services as it understood it had the contractual right to do. There is no evidence that SunTrust ever knew or reasonably should have known that it was IPG's fiduciary, and the Court will not depart from the long-established view of a creditor-debtor relationship under these circumstances.

When the Bankruptcy Court indicated that there was a dispute between the parties regarding the nature of the relationship between IPG and SunTrust, it was correct. However, it was not correct that the dispute is over *material issues of fact*. (*See* ECF No. 67-2 at 34.) The facts about the business relationship are undisputed, and the only remaining question is whether the relationship ought to be characterized as fiduciary in nature. This determination is the prerogative of the Court, *see Cowburn*, 619 S.E.2d at 447, and the undersigned now resolves that question by finding that it was not a fiduciary relationship. In the absence of any fiduciary duty owed, the Court need not reach questions of breach or the proximate relationship of purported damages to any such breach. Accordingly, Defendant's objections are sustained, summary judgment is granted, and the Proposed Order is modified in keeping with this ruling.

### C. Aiding and Abetting Breach of Fiduciary Duty

Trustee objects to the Bankruptcy Court's recommendation that summary judgment be granted in favor of SunTrust as to Trustee's claim for aiding and abetting a breach of fiduciary duty. The Bankruptcy Court correctly identified the elements for aiding and abetting a breach of fiduciary duty as: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. (ECF No. 67-2 at 31 (citing *Gordon v. Busbee*, 723 S.E.2d 822, 830 (S.C. Ct. App. 2012); *Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. Ct. App.

2008)).) The Proposed Order states, "Even if the other factors were present, there is no evidence of SunTrust's knowing participation in any breach of fiduciary duty." (*Id.*) And further, "While the record is clear that Pfaff breached his fiduciary duties to IPG by embezzling funds from IPG's SunTrust accounts, there is no corresponding evidence from which a jury could find that SunTrust aided and abetted in this process when applicable law is applied to these facts." (*Id.*)

Trustee first argues that the requirement that Trustee establish SunTrust's "knowing participation" in a breach of fiduciary duty does not mean that Trustee must show that SunTrust was Pfaff's co-conspirator. (ECF No. 67-6 at 2.) Rather, asserts Trustee, this element may be satisfied if the aider and abettor "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." (*Id.* (quoting Restatement (Second) of Torts § 876(b) (1979)).) Trustee argues that there is evidence in the record that IPG never entered into a Foreign Currency Transaction Account ("FCTA") agreement with SunTrust, and that by allowing Pfaff access to FCTA accounts without such an agreement in place SunTrust *knowingly participated* in Pfaff's breach of fiduciary duty. (*Id.*) In support of the assertion that SunTrust knowingly allowed Pfaff to use "unauthorized" accounts, Trustee cites random pieces of evidence from the record never before referenced in any of his extensive briefing, asks rhetorical questions—*e.g.*, "The question <u>must</u> be asked of SunTrust: Where is the Agreement that allows Pfaff to write drafts and sign on your accounts?" (*id.* at 3), and engages in bald-faced conjecture—*e.g.*, "[W]hether Pfaff's breaches of fiduciary duty occurred through theft, some elaborate kiting or Ponzi scheme or just a gross lack of care, SunTrust by giving

unauthorized access to Pfaff provided 'substantial assistance' to Pfaff sufficient to create a genuine issue of material fact" (*id.* at 4).

The Court disagrees. As explained *supra* at note 5, IPG's establishment and use of the Multicurrency Account ending in 1248 was authorized. Trustee's objection seeks to undermine the Bankruptcy Court's recommendation of dismissal by discounting its finding on the essential element of this claim: knowing participation. *See Simmons v. Danhauer & Assocs., LLC*, No. 8:08-CV-03819-JMC, 2010 WL 4238856, *4 (D.S.C. October 21, 2010) ("'The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach.'" (quoting *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 50 (S.C. 1996))). "Knowing participation" requires more than mere linked involvement in a breach; rather, there must be active encouragement or active procurement of the breach of fiduciary duty. *Simmons*, 2010 WL 4238856, at *4 (citing *Vortex Sports*, 662 S.E.2d at 448). Absent evidence of SunTrust's *actual knowledge* of improper activity on Pfaff's part, SunTrust cannot be found to have knowingly participated in Pfaff's breach of fiduciary duty and the Trustee's claim fails. *See Gordon*, 723 S.E.2d at 830 (upholding the trial court's grant of a directed verdict on an aiding and abetting a breach of fiduciary duty claim and holding that, even where defendant should have conducted additional investigation, failure to do so does not constitute evidence of actual knowledge of improper activity by the fiduciary). In accordance with the authority provided him by IPG in the FX Authorization and FX Certificate, Pfaff requested, and SunTrust opened, the Multicurrency Account for use in furtherance of IPG's foreign exchange business. (*See* SunTrust's Reply to Trustee's Objections, ECF No. 68-1 at 8-12 (citing relevant provisions of the FX Authorization, FX Certification, and FX Terms

and Conditions).) Importantly, IPG never communicated any concerns about any unauthorized or improper transactions related to the Multicurrency Account prior to IPG's failure in January 2008, despite the fact that Burgess received nightly emails detailing the daily movement of funds within the 1248 account (including beginning balance, daily activity, closing balance, and transaction description information) and monthly account statements listing activity therein. (ECF No. 67-2 ¶¶ 28-31.)

The remainder of Trustee's objections regarding the disposition of this claim are either rehashed versions of arguments previously raised and rejected by the Bankruptcy Court or exercises in speculation. The Court finds that they are insufficient to establish a genuine issue of material fact as to SunTrust's knowing participation in Pfaff's breaches of fiduciary duty, adopts the recommendation of the Bankruptcy Court, and grants summary judgment on this claim accordingly.

### D. Breach of Contract Accompanied by a Fraudulent Act

Finally, Trustee objects to the Bankruptcy Court's recommendation that summary judgment be granted as to his cause of action for breach of contract accompanied by a fraudulent act. The Bankruptcy Court correctly identified the elements for breach of contract accompanied by a fraudulent act as: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. (ECF No. 67-2 at 31 (citing *Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005); *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503-04 (S.C. Ct. App. 1985)).) In recommending that summary judgment be granted on this claim, the Bankruptcy Court stated, "The record before the Court does not include evidence of a fraudulent intent relating to any breach

or any fraudulent act accompanying a breach committed by SunTrust." (*Id.*) Addressing Trustee's arguments about SunTrust's withdrawal of IPG's access to the OTM and OFX systems specifically, the Bankruptcy Court explained that "the arguments made by Trustee and portions of the record offered to support [his] claim that SunTrust Committed a fraudulent act or had any fraudulent intent are lacking. Trustee merely suggests that SunTrust could have handled the situation differently and poses questions about the motives of its employees." (*Id.* at 32.) The Bankruptcy Court concluded, "Questions and theories are not sufficient to support [] Trustee's cause of action and therefore summary judgment in favor of SunTrust on this cause of action is appropriate." (*Id.*)

Trustee's objections regarding this claim center on the Bankruptcy Court's finding that there was no evidence in the record of fraudulent intent or any fraudulent act accompanying any purported breach of contract by SunTrust. (*See* ECF No. 67-6 at 8.) Trustee asserts that the record contains a number of alleged "circumstances" that evidence SunTrust's fraudulent intent, specifically: (1) SunTrust's attempt to obtain a release from IPG; (2) "SunTrust's offer to pay at least $1 million to Burgess"; (3) "SunTrust's lack of internal controls in its FCTA accounts"; (4) SunTrust's "terminat[ing] the account when it had no financial risk"; and (5) SunTrust's "deliberate destruction of records resulting from SunTrust's deletion of IPG's account." (*Id.*) Trustee includes no citations to the record to substantiate these bold (often misleading, sometimes objectively false)[8] allegations. As to an alleged fraudulent act, Trustee avers that

---

[8] For example, Trustee insinuates that SunTrust offered to pay Burgess $1 million as some kind of "buy off" and to "look the other way" because it knew its own conduct to be wrong. (Opp., ECF No. 61-1 at 2, 19, 31, 41; Trustee's Objections, ECF No. 67-6 at 8.) But the record demonstrates that SunTrust offered Burgess a cashier's check totaling the then-current balances in IPG's accounts, approximately $1 million

SunTrust requested a release from IPG "as a condition of keeping the accounts open." (*Id.*) There is no evidence to support this allegation, and Trustee cites none. Nothing in the release shows or even hints that it was "a condition of keeping the accounts open." (*See* Collins Dep., Ex. 3, ECF No. 15-1 at 19-20.) The record is replete with evidence that even after Burgess refused to sign the letter containing the release language (Compl., ECF No. 5-1 ¶ 25), SunTrust made extensive efforts to assist Burgess with his information-related requests pertaining to the accounts. (Collins Dep., ECF No. 50-1, p. 79, ll. 2-18, p. 136, ll. 18-25, p. 137, ll. 1-4 (SunTrust spent several months working to provide Burgess with hard copy records of IPG's ACH activity); Graham Dep., ECF No. 50-3, p. 53, ll. 10-25, p. 54, ll. 1-5, p. 57, ll. 6-11 (describing research conducted by SunTrust at Burgess' request over a four month period beginning immediately after OTM and OFX access was withdrawn in January 2008); Beard Dep., ECF No. 49-5, p. 70, ll. 1-13 (explaining that SunTrust gave Burgess paper copies of numerous records of IPG transactions occurring prior to January 2008).) IPG's U.S. dollar accounts ending in 2150 and 2168 remained open as of the date of the filings at issue here. (*See* Mot. Summ. J., ECF No. 31-7 at 20; SunTrust's Reply, ECF No. 64-1 at 23; SunTrust' Reply to Objections, ECF No. 68-1 at 26; Scott Aff., ECF No. 44-1 ¶¶ 6, 8.) The Multicurrency Account was closed after the report of Pfaff's thefts and after all currencies therein were converted to U.S. dollars and deposited into one of IPG's U.S. dollar accounts. (*See* ECF No. 31-7 at 38; ECF No. 68-1 at 26; Burkett Report, ECF No. 54-1 at 18-20.)

---

dollars, which SunTrust suggested closing due to risk-related concerns. (Collins Dep., ECF No. 66-3, p. 130, ll. 5-25, p. 131, ll. 1-25, p. 132, ll. 1-4.) Additionally, it is hardly worth the Court's comment at this point, but Trustee's repeated assertion that SunTrust bore no financial risk in its business dealings with IPG, particularly in light of Pfaff's defalcations, is utterly frivolous. (*See* Mot. Summ. J., ECF No. 31-7 at 26-27, 35-36, 53-54 (offering a complete discussion of SunTrust's risk with citations to evidence of record).)

The Court would say very little in disposing of Trustee's objections on this claim. The objections include no explanation or citations to evidence. Put simply, there is nothing to support that SunTrust actually engaged in the behavior alleged. *See In re Romero*, No. ADV 10-80051-HB, 2010 WL 4863781, *8-9 (Bankr. D.S.C. Nov. 23, 2010) ("Plaintiffs cannot merely refer to their allegations alone" to defeat a motion for summary judgment and "[m]ere allegations unsupported by any detail or evidence in the record, cannot serve as a basis for . . . indicating that there is a genuine issue of material fact . . . ."); *Tuttle v. McHugh*, 457 F. App'x 234, 236 (4th Cir. 2011) ("To withstand a summary judgment motion, the non-moving party must produce *competent evidence* sufficient to reveal the existence of a genuine issue of material fact for trial." (emphasis added)). "Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a 'mere scintilla of evidence' in support of a nonmovant's case suffices to forestall summary judgment." *Tuttle*, 457 F. App'x at 236–37 (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). "[L]ingering suspicions and allegations are not enough to establish a genuine issue of material fact." *In re Kain*, No. ADV 10-80047-HB, 2012 WL 1098465, at *8 (Bankr. D.S.C. Mar. 30, 2012), *aff'd*, No. 7:12-CV-02031-JMC, 2013 WL 1115597 (D.S.C. Mar. 18, 2013). Compounding his failure to cite the record in support of his fraud-related allegations is the Trustee's failure to cite any legal authority in support of his claim that those assertions, even if true, are sufficient to evidence fraudulent intent or a fraudulent act on SunTrust's part. Consequently, the Court adopts the Bankruptcy Court's recommendation as to this claim without further explanation.

### E. Remaining Claims

As to the Bankruptcy Court's treatment of the remaining claims, this Court has conducted the requisite *de novo* review, *see Executive Benefits*, 134 S. Ct. at 2173, and finds no error therein. In his objections to the Proposed Order, Trustee made no argument regarding these remaining claims. (*See* ECF No. 67-6.) Accordingly, SunTrust's Motion for Summary Judgment is granted with respect to Trustee's causes of action for conversion, tortious interference with contractual relations, violation of the South Carolina Unfair and Deceptive Trade Practices Act, and violation of S.C. Code Ann. §§ 36-4A-102, *et seq.*

## CONCLUSION

After *de novo* review of the record and careful consideration of the parties' briefs, the Proposed Order of the Bankruptcy Court, and all pertinent objections and responses, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 37-1) in full. As such, the Court adopts and incorporates those portions of the Proposed Order that are consistent with this ruling, and modifies those portions of the Proposed Order that pertain to Trustee's causes of action for negligence and gross negligence, and breach of fiduciary duty.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

August 25, 2016
Greenville, South Carolina